[Civil No. 4343. Filed April 7, 1941.]
[112 Pac. (2d) 215.]

JESUS M. ALMANZA, Petitioner, v. PHELPS DODGE CORPORATION, U. V. BRANCH, Defendant Employer; THE INDUSTRIAL COMMISSION OF ARIZONA, Defendant Insurance Carrier, Respondents.

Mr. Robert R. Weaver, for Petitioner.

Mr. Rouland W. Hill and Mr. Howard A. Twitty, for Respondents.

McALISTER, J. — The petitioner, Jesus M. Almanza, was injured on April 19, 1939, in an accident arising out of his employment with the Phelps Dodge Corporation, United Verde branch, at Clarkdale, Arizona. On July 16, 1940, he was awarded $154.40, and from an affirmance of this award on rehearing the petitioner has brought the matter here by *certiorari* for review.

The record discloses that the petitioner was accidentally injured when he was pushed against a platform by a loaded ore car and that immediately afterwards he complained of great pain in the left chest and back. However, the company physician, Dr. Jolley, examined him the same day, both physically and by X-ray films and failed to find any evidence of a fracture or other injury. Notwithstanding the doctor's findings, the petitioner laid off for five days at the end of which he was given work as janitor but at the expiration of twelve days or about May 6 he quit that job also. On May 11 he was admitted to the hospital and remained there until May 23 when he was discharged. A day or so before leaving the hospital X-rays were made and they revealed multiple apical abscesses and advanced pyorrhea which were causing

some arthritis in his left arm and shoulder. He was advised by Dr. Jolley to see a dentist, the result being that all his upper teeth were removed. He did not return, however, to have the lower ones extracted or a plate made but early in July sold his home in Clarkdale and moved to Phoenix.

On August 4 thereafter he called on the Industrial Commission and advised it of the accident, stating that it had not been reported and requesting that he be allowed to file a claim for compensation. Upon learning from him and persons connected with the employer what had occurred up to that time the Commission sent him to several of its medical advisors for examination, Dr. James R. Moore, Dr. A. C. Kingsley and Dr. E. Payne Palmer. From the X-rays made in Jerome just before he was discharged from the hospital and especially those taken by the pathological laboratory in Phoenix on October 21, Dr. Moore discovered that the eighth rib on the left side had been fractured at the anterior end about one-half inch from its junction with the costal cartilage, though it had then healed without any displacement or offset. This finding was confirmed by the examination of Dr. Kingsley and Dr. Palmer made ten days later though they stated in their report that petitioner should have made a complete recovery from the fracture in six or eight weeks and that partial temporary disability for this period of time would compensate him for his injury. So on March 29, 1940, the petitioner filed his claim for compensation but before the award was made on July 16 the five physicians composing the medical advisory board, namely, A. C. Thomas, C. E. Yount, James Lytton-Smith, F. W. Butler and W. W. Watkins, examined him both physically and with the aid of X-rays, those made theretofore as well as new ones taken on May 31, 1940, at their request, and they reported that in their opinion "there is no disability in this case

attributable to the accident in question." Acting upon the report of the physicians, the Industrial Commission found that he had suffered an injury on April 19, 1939, which caused a temporary disability from May 7, 1939, to July 5, 1939, and awarded him $154.40.

Being dissatisfied with this award, Almanza filed a petition for a rehearing on August 12, 1940, in which he stated that he was still suffering from the effects of the injury and will continue to be totally disabled by reason thereof for a long time to come and that he wished "to introduce new evidence to the effect that he has suffered an injury to the diaphragm and other internal injuries, besides the broken ribs shown by X-rays." It was granted and at the hearing he testified that he had worked for the company since 1913 but had not been able to do anything since; that he had sharp pains in his side and for eight months could not sleep or lean on it; that he finds it hard to breath after doing even a little work; that he first began to have that tired feeling when he got hurt. His daughter testified that he tries to work around the house but tires very easily and complains of a pain in his side and that it is "sort of hard to breathe." Robert Duarte, who was building a home for this daughter and attempted to use him on the job, said he could work only four or five minutes before stopping and complaining of pain in the side and of "suffocating and his breath." Dr. Louis P. Lutfy, a practicing physician, who less than two months before the rehearing on September 24, 1940, gave petitioner a physical and fluoroscopic examination and at the same time had the benefit of two X-ray films made by the Goss Laboratory on August 20, 1940, testified that in his opinion the petitioner was not able to work.

There would seem to be no question from the evidence but that the petitioner had been disabled since the accident, at least, from doing anything but very

light work, and that it would in all probability continue for some time but how long no one said. The important question, therefore, was whether his disability resulted from the accident or was brought about by disease, a matter that could be determined only by medical experts. Dr. Lutfy's testimony on this question was in substance that if the petitioner was squeezed between the platform and the car with sufficient pressure "to cause contusion of the ribs" it would likely cause rupture to the diaphragm, though an examination of the X-rays did not disclose a rupture but the fluoroscope did show a roughening of the diaphragm and adhesions, which were caused either by injury or disease. However, he could not say which, though he stated that the fact that the roughening was on the diaphragm suggests that it might have resulted from injury rather than disease. In reaching this conclusion, as well as the one relative to disability, he took into consideration the subjective symptoms given him by the petitioner, namely, "pain in the left side of the chest, in the ribs and in the left shoulder—hurts all the time especially after exercise. After a deep breath he has a stabbing pain in the front of the chest."

Dr. James R. Moore, also a practicing physician, who discovered the rib fracture and examined all the X-rays, testified that there was nothing in the earlier films showing any abnormal appearances in the pleura, sulcus, lungs or diaphragm, but in those made May 31, 1940, there is shown some irritation of the pleura with the consequent thickening of the structure which might be referred to as pleurisy. However, he stated that the same condition was present on both sides of the chest and that where involvement of the pleura is caused by trauma on the left side one would not expect pleurisy to develop on the right. Trauma on

one side could not be a common cause of pleurisy involvement. He testified, in addition to this, that the X-ray films of May 31, 1940, disclosed that the aorta was larger than it was when the film of May 11, 1939, was made and that this indicated a possible aortitis, the symptoms of which are usually a feeling of oppression in the chest, shortness of breath, particularly on exertion, occasional pains over the heart and in the left upper extremity, some of which petitioner complained. He stated further that the Kahn and Wasserman tests indicated a luetic infection and that one of the favorite sites for syphilis to attack is the walls of the aorta. In his opinion there is nothing to distinguish whether the shadows shown in the x-rays are from a cause brought about by disease or injury, and there is no reason why "one would have to invoke trauma (instead of disease) as a cause for that particular condition." In reply to the question whether, in case of a patient whose medical history showed no complaints of the nature of petitioner's until they suddenly developed upon injury, he would believe the facts indicated the trouble was caused by injury, Dr. Moore answered, "No, not necessarily because pleura irritations are very common and at autopsy they are found most frequently even in cases in which there has been no definite history of injury or illnesses that the patient can remember."

The pathological laboratory which made X-ray films of petitioner on May 31, 1939, again on May 31, 1940, and had the benefit of films made May 11 and May 22, 1939, in Jerome, and some made on January 20, 1940, by Dr. Servin of Los Angeles, filed a report of its findings on June 4, 1940, and it contained statements very much the same as those expressed by Dr. Moore. After explaining what each of the films disclosed, it concluded with this statement:

"The conclusions from the x-ray findings would be that there has developed a diffuse enlargement of the aorta since the examination of May 11, 1939, and that the pulmonary densities and evidence of pleural involvement have also developed since the latter date and that they are bilateral involving the right sulcus to as great a degree as the left. So far as the x-ray appearances indicate, there is evidence of aortitis with pleuro-pulmonary inflammation. Suggestion was made that a serological investigation is in order.

"#82344, Blood: The Kahn test was positive; the Kolmer Titration reactions showed this to be 30 plus positive."

■■ While it might appear to a layman that the disabled condition of petitioner resulted from the injury rather than disease because it came upon him suddenly immediately following the accident after he had worked twenty-six years for the same company without being physically unfit at any time for his duties, yet the question is one concerning which medical testimony only is admissible, and in this case the doctors do not agree. An award either way would have found sufficient support in the record.

■ Dr. Lutfy, it will be observed, was quite positive in the view that petitioner was disabled but neither he nor Dr. Moore was very decided in his opinion as to the cause of disability. Dr. Lutfy expressed a little more emphatically the view that his condition was the result of the injury than Dr. Moore did the opinion that there was nothing in the evidence to enable one to determine whether his condition was caused by disease or injury. The question was one concerning which positive knowledge could not be had and when this is true the fact that one opinion is expressed more positively than the other does not make it the duty of the trier of the fact to give it more weight than the other. The rule that positive evidence should prevail over negative has no application in such a

situation. *Chapman* v. *Finlayson Lease, et al.,* 56 Ariz. 224, 107 Pac. (2d) 196.

The award is affirmed.

LOCKWOOD, C. J., and ROSS, J., concur.