382 P.2d 656

**John RAHAR, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona and E. N. Basha, dba Basha's, Respondents.**

**No. 7551.**

Supreme Court of Arizona.

In Division.

June 19, 1963.

Filler & Paytas, Phoenix, for petitioner.

C. E. Singer, Jr., Phoenix, for respondent Industrial Commission of Arizona, Donald J. Morgan, Lorin G. Shelley, Ben P. Marshall, and Laurence Davis, of counsel.

BERNSTEIN, Chief Justice.

This is a petition for certiorari to review an award of the Industrial Commission. The award of the commission denied petitioner further compensation for injury to his back arising out of an industrial accident in 1959. Petitioner argues that rather than having been discharged he should have been further examined and treated in order to find out if surgery on his back was required and to see if the industrial accident had resulted in a permanent disability.

Petitioner was a liquor salesman. At the time of the injury he was in a cramped position lifting beer cases in a cooler. He injured his back when he picked up one of the cases.

> "In the process of doing this, I picked up a case and I hurt my back. I felt a hot pain go through my low back and I let go of it."

The petitioner was first treated by Dr. Hartman who referred him for examination and treatment to Dr. Tuveson, an othopedic surgeon. On the basis of a physical examination and x-rays Dr. Tuveson was of the opinion on May 20, 1960:

"Present examination shows no *definite* evidence of nerve root irritation. X-rays show degenerative changes of his lumbar spine which are probably the causation of his present complaints. He would probably benefit from a short course of physiotherapy consisting of muscle stretching, pelvic rotation exercises and the gradual resumption of his usual activities. We see no reason why with the subsidence of his subjective complaints that this patient could not be discharged and probably without any permanent disability." (Emphasis added)

The treatments did not aid petitioner's condition and on August 22, 1960, he was examined by Dr. McGovern who found

" * * * there is little clinical evidence of it but I get the definite impression that this man has a herniated disc."

Petitioner was then seen by Dr. Steelman and a myelogram was done. Both Dr. Steelman and Dr. Tuveson reported to the commission that the myelogram showed that petitioner has suffered a herniated disc at the place where his back was injured. On the recommendation of Dr. Tuveson surgery was scheduled but was cancelled because petitioner was experiencing nausea, dizziness and chest pain.

A group consultation of a board made up of Drs. Tuveson, Green, Hoffman, Dorfman, and Edwards examined petitioner on October 18, 1960. They had before them his x-rays and the result of the myelogram. The board's comments were as follows:

"The consulting board is of the opinion that this patient sustained a protruded intervertebral disc at the L $\frac{4}{5}$ level as a result of the accident of December 5, 1959, and the present low back symptoms are reasonably attributed to this area.

"The general symptoms of nervousness, epigastric, precordial and trapezius discomfort are not directly associated with the injury in question; however, these symptoms present a considerable handicap in the proper management of the patient's industrially-sustained back condition.

"In the opinion of the consultants the patient should be referred to a psychiatrically-oriented internist for investigation of his gastro-intestinal symptomology, as an industrial responsibility, on an investigative basis, and to adequately prepare the patient for definite therapy of the low back problem. The patient will be unable to carry out gainful occupation until after the investigation has been completed."

Upon examination by the internist it was found that plaintiff was not suffering from any ailment which would keep him from having necessary surgical treatment.

On December 2 and 21, 1960, Drs. Tuveson and Steelman reported to the commission that surgery would be of little help and Dr. Tuveson said on December 15, 1960, he tried to

" * * * encourage [petitioner] to disregard his discomfort * * *"

Another group consultation was had on April 26, 1961. The new board was made up of Drs. McLoone (Dr. Tuveson's partner) Pfeil and Edwards. Except for a physical examination the new board had before it the same data as did the original board. The comments of the board were:

"After a review of the file and a physical examination today, in the opinion of the consultants, *although the patient continues with some subjective complaints referable to the low back * *  there are no significant abnormal objective findings on physical examination today and specifically no evidences of nerve root irritation.

"In the opinion of the consultants, the patient is able to and should return to his usual occupation. His condition is now considered stationary, no further treatments or examinations are indicated as an industrial responsibility and he may be discharged from further care without any permanent disability attributable to the accident." (Emphasis added)

Based on this report petitioner was discharged.

On petition for rehearing Dr. Tuveson stated that it was his opinion that the back strain had aggravated a degenerative joint disease involving the lumbar spine but that normally the aggravation would cease and further complaints would be the result of the natural progress of the disc disease.

When asked why he had receded from the recommendations of the original board, of which he was a member, he testified,

"Q. But I notice from this report that it was the opinion of the Consultation Board, and also from previous reports, that it was the result of his accident?

"A. That is what we said at that time, yes, sir.

"Q. You believe it?

"A. At that time, but if you will go through the records, sir, *I kind of crawfished on that.*" (Emphasis added)

More importantly Dr. Tuveson testified at the rehearing in answer to a question by the referee:

"Q. Doctor, in order to give an opinion today concerning Mr. Rahar's condition regarding whether or not he has either new, additional or previously undiscovered disability, would you have to see him again in consultation and give him an examination or would you

be able to give an opinion based upon reasonable medical probability if you could hear his complaints today?

"A. *I would sooner examine him again and see what his condition is at this time.*" (Emphasis added)

Dr. McLoone testified at the hearing that whatever the condition had been nature had repaired it and it had healed without any residual disability. Dr. McLoone also testified, however:

"Q. What did your opinion say; you said he could go back to work, that you thought there was no permanent injury; isn't a herniated disc a permanent injury?

"A. Any injury is permanent.

"Q. A herniated disc is a permanent injury, isn't it, though, doctor; it is definitely permanent, there is no way it can ever be put back together; once it is herniated, it is permanently injured, isn't that true?

"A. That applies to any injury."

     \*     \*     \*     \*     \*     \*

"Q. \* \* \* do you know what condition that man has in his spine this day as a result of that herniated condition that existed when that x-ray was taken, today, right today, the day of this hearing?

"A. I haven't examined him in six months."

Dr. Hartman testified:

"Q. It would be your recommendation that this case be reopened for the purpose of taking x-rays, making additional studies and bringing it up to date?

"A. Yes."

■ We have often said that we will not substitute our opinion for that of the commission where the commission has resolved a conflict in medical testimony. See, e. g. Bishop v. Industrial Commission, 94 Ariz. 65, 381 P.2d 598 (1963); Books v. Industrial Commission, 92 Ariz. 302, 376 P.2d 769. In the case there is agreement that the injury was caused by the industrial accident. There is agreement that the injury aggravated a pre-existing condition. There is agreement that there is a present disability. The only question is whether the present disability is due to the aggravation or due solely to degenerative changes. The original examining board had before it complete data when it made its comments. The second board had no further data except for a physical examination. Dr. Tuveson, who was the doctor directly concerned with petitioner's condition in these proceedings first decided the back condition was caused by degenerative changes; then recommended surgery and agreed with a board which commented that the condition

was caused by the injury and that surgery was indicated; then went back to his first opinion; and at the rehearing testified that to give an accurate answer he would have to re-examine the petitioner.

The commission tells us that "wise men often change their minds, but fools never do". While we agree we think that the mind changing in this case amounts to equivocation. Equivocal testimony cannot create a conflict in medical testimony. Helmericks v. Airesearch Manufacturing Co. of Arizona, 88 Ariz. 413, 357 P.2d 152. The petitioner proved the injury arose out of an industrial accident and in the course of his employment, and the commission had no credible medical evidence before it on which to base its award. McAllister v. Industrial Commission, 88 Ariz. 25, 352 P.2d 359.

Where this is the case the award will be set aside. Egbert v. Industrial Commission, 93 Ariz. 33, 378 P.2d 482. In any further proceedings the commission should keep in mind the difference between medical and legal causation. See, e. g., Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627; and Tatman v. Provincial Homes, 94 Ariz. 165, 382 P.2d 573.

Award set aside.

UDALL, V. C. J., and JENNINGS, J., concur.