512

441 P.2d 278

Charles SULLIVAN, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, and McAfee-Guthrie, Inc., Respondents.

No. I CA–IC 139.

Court of Appeals of Arizona.

May 27, 1968.

Skousen, McLaws & Skousen, by, Richard E. Skousen, Mesa, for petitioner.

Robert K. Park, Chief Counsel, by, Noel J. R. Levy, Phoenix, for respondents.

CAMERON, Chief Judge.

This is a writ of certiorari to review the lawfulness of an award and findings of the Industrial Commission of Arizona issued 7 March 1967, which found that the petitioner has no residual physical disability attributable to the industrial episode he suffered. We are called upon to determine if the decision of the Commission is reasonably supported by the evidence.

The facts necessary for a determination of this matter are as follows. Charles Sullivan, the petitioner herein, was employed by McAfee-Guthrie, Inc. as a laborer on 17 June 1964. On that date he suffered an injury to his back while lifting heavy pipe. The Industrial Commission accepted the accident as compensable, and petitioner received medical care and temporary disability compensation through 11 March 1965, when he was released from further medical treatment upon the recommendation of a group medical consultation, whose report was concurred in by his attending physician. Both the consultation group and the attending physician were of the opinion that the petitioner's condition was stationary, and that he could return to his regular employment.

Timely petition for rehearing was made, and several further awards were issued after formal hearings had been held, culminating in the award which is the subject of this petition.

The petitioner's attending physician, Dr. J. Edwin Keppel, filed a report with the Industrial Commission on 30 January 1965, stating:

"I am discharging Mr. Charles Sullivan from this injury this date because I feel that there is nothing more to be done for him medically. However, this patient will not be physically able to resume the heavy work he had done before and at the time of his injury. He will also be susceptible to recurrence of this disability. For this reason I recommend that your review board examine this patient for disability evaluation."

11 March 1965 the petitioner was examined by a medical consultation board

composed of four doctors. The conclusion of these physicians is as follows:

"This patient's condition relating to the injury of 6–17–64 has reached a stationary point and we are in agreement with Dr. Keppel that there is no further need for medical treatment or observation. This patient had fairly advanced degenerative joint disease at the time of his injury and apparently sustained a lumbosacral strain which has resolved.

"It is our opinion that the patient is capable of resuming his usual activities as a laborer, or other comparable activities.

"The patient's history of blackouts has no relationship to his injury of 6–17–64 and these, and his elevated blood pressure, should be investigated on a private basis by his physician.

"No permanent disability attributable to this injury is present."

Dr. Keppel received a copy of the group consultation report, and was subsequently asked by the Commission, "please give us your comments re consultation of 3–11–65, and date of discharge." Dr. Keppel replied,

"Date of discharge 3–16–65. I concur that he has recovered without disability, but due to the underlying low-back disc disease and with two injuries sustained in the same area in the past year, I feel that lighter work is indicated."

A formal hearing was held on 22 March 1966. Dr. Howard P. Aidem, a member of the group medical consultation board, testified at that hearing. He stated:

"Q   Now, Doctor, subsequent, of course, if you are given a history that prior to this accident he was able to do heavy labor work approximately eight hours a day, lift approximately 70 pounds, perform with a shovel and shoveling dirt and what have you, and that subsequent to the industrial accident he couldn't do this type of work anymore, can you give us an opinion as to whether his subsequent problems are related to the industrial accident?

"A   Well, we thought that his industrial accident had caused a temporary increase in back symptoms which were basically resultant from a strain which wouldn't have reasonably been expected to have persisted for several years or to permanently incapacitate him. His inability to lift, which was really his own statement, was based on his complaint of back pain which we attributed to preexisting degenerative disease in his low back. He had had an accident not too far below this one which also had caused back pain and it seems most reasonable to attribute his back complaints to his progressive joint changes in the back, that is to say, that the lifting injury really was not the basis for his continuing complaints.

"Q   In other words, in essence, Doctor, are you saying on reasonable medical probability that albeit a preexisting degeneration there was a temporary episode in his physical life and that it should have abated within a reasonable time is that what you are saying?

"A   Well, any ligamentous or muscular strain would be expected to clear up rapidly, but symptoms referable to his degenerative changes might be expected to persist but they were present on x-ray at time of injury."

The tenor of Dr. Aidem's testimony, both on direct examination and on cross-examination, was that the symptoms which the petitioner complained of at the time of his examination were referable to his degenerative condition, and were not the result of the industrial injury, either directly or by way of aggravation of a preexisting condition.

The petitioner argues that he was able to perform arduous labor prior to his in-

**514**

dustrial injury in 1964, and that subsequently he has been unable to do so. The petitioner, at a second hearing held 4 January 1967, presented the testimony of Dr. Huffman. Dr. Huffman examined the petitioner on 28 July 1966. He testified that he did not have the Industrial Commission file available to him at that time nor did he have the previous X rays available for a comparison at the time of the examination, however, between the time of the examination in July and his written report which was dated in October, he testified that he had seen X rays which were taken at Southside Hospital in Mesa, Arizona. Dr. Huffman did not recall the date that these X rays were taken. Dr. Huffman was of the opinion that the industrial incident aggravated the petitioner's degenerative back disease. He stated:

"Q Well, Doctor, in what way then did did the 1964 incident aggravate the preexisting condition?

"A. Probably by increasing it somewhat a little more rapidly.

"Q And is this aggravation in your estimation a permanent thing?

"A The aggravation, I don't know that I can say the aggravation is a permanent thing; I can say that the condition is a permanent thing."

■ It is apparent from the testimony set forth above that there was a conflict in the medical evidence before the Commission. We have stated that the privilege and duty of resolving conflicts in the evidence in compensation proceedings rests on the Industrial Commission. Nye v. Industrial Commission, 5 Ariz.App. 165, 424 P.2d 207 (1967). Where the Industrial Commission award is reasonably supported by the evidence it is the duty of the reviewing court to affirm. Nickerson v. Industrial Commission, 4 Ariz.App. 372, 420 P.2d 944 (1966), Johnson v. Industrial Commission, 5 Ariz.App. 185, 434 P.2d 833 (1967).

■ It is the opinion of the Court that the award of the Commission is reasonably supported by the evidence.

The award is affirmed.

DONOFRIO and STEVENS, JJ., concur.