489 P.2d 1267

**CONTINENTAL CASUALTY COMPANY,**
Petitioner-Carrier,

v.

The **INDUSTRIAL COMMISSION** of
Arizona, Respondent,

John W. Patterson, Respondent Employee.

No. 1 CA–IC 607.

Court of Appeals of Arizona,
Division 1,
Department A.

Oct. 28, 1971.

Stewart & Pickrell, Ltd., by Robert W. Pickrell, Phoenix, for petitioner-carrier.

Morgan & Jerome, by Donald J. Morgan and D. A. Jerome, Phoenix, for respondent employee.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

DONOFRIO, Judge.

This is a review by writ of certiorari of the findings and award of The Industrial Commission of Arizona which awarded accident benefits and compensation to respondent and claimant, John W. Patterson.

Briefly, the pertinent facts are that claimant suffered a massive myocardial infarction while piloting a twin-engined aircraft for the J. R. Norton Company from Springerville, Arizona, to Phoenix on January 7, 1967. One of the passengers, who had a pilot's license, landed the aircraft in Show Low, Arizona. The claimant was taken to the hospital at Show Low where he remained for seven days, then was taken to St. Joseph's Hospital in Phoenix for special care where subsequently one of claimant's legs was amputated because of a blood clot which was indicated was a result of the cardiac condition.

Claimant applied for compensation. After reports and investigation the Commission, on November 8, 1967, issued its findings and award for noncompensable claim. On writ of certiorari this Court, in Patterson v. Industrial Commission, 10 Ariz.App. 421, 459 P.2d 338 (1969), set aside the Commission's award, holding that the Commission's findings failed to dispose of the material issues of whether the myocardial infarction was an injury arising out of and in the course of employment or whether conditions of employment were such that subsequent to injury there was aggravation which was work-connected even if the infarction were not so connected. The Commission then on May 5, 1970, issued a findings and award for compensable claim, finding that claimant sustained a personal injury by accident arising out of and in the course of his employment. Following the acceptance award, the insurance carrier petitioned for hearing and a further hearing was held over claimant's objections and a detailed report of the hearing officer was filed on September 24, 1970. This report, with specific findings was, after review by the Commission, the basis of the instant award dated November 20, 1970, granting claimant benefits and compensation. It is from this award that the carrier now appeals.

The sole question presented on review is whether the respondent employee-claimant established his right to benefits by fulfilling his burden of proving a compensable claim.

The applicable law is well established. First, the burden is upon claimant to establish an injury by accident arising out of and in the course of employment. Next, unless the result of an accident is clearly apparent to the ordinary layman, the question as to the physical condition of a claimant after an accident and the causal relation of the accident to such condition can usually be answered only by expert medical testimony. Caekos v. Stanley Fruit Co., 55 Ariz. 72, 98 P.2d 471 (1940). See also Zazueta v. Industrial Commission, 15 Ariz.App. 426, 489 P.2d 273 (filed October 13, 1971).

As we view the matter, the medical evidence presented in this case centered primarily around the testimony of the hereafter mentioned doctors. Dr. Bullington, a specialist in cardiology, who treated the claimant while he was in St. Joseph's Hospital in Phoenix, testified at the October 30, 1968 hearing that in his opinion, based upon reasonable medical probability, the conditions of the claimant's employment, to wit, flying the aircraft at an altitude of approximately 8,500 feet under decreased pressure and less oxygen was a contributing factor to the onset of the myocardial infarction or was an aggravating factor, although admittedly not the sole factor.

At the hearing held on September 21, 1970, the insurance carrier produced as its witness Dr. Morton H. Dubnow, a specialist in internal medicine. He testified that in his opinion it was unlikely that the conditions of applicant's employment could

be considered a factor in precipitating a myocardial infarction.

Where there is a conflict in the medical testimony, as there exists here, the Commission has the duty and the responsibility to resolve those conflicts, and if the Commission's result is substantiated by competent evidence, we will not substitute our judgment for that of the Commission. Frizzell v. Industrial Commission, 6 Ariz. App. 293, 432 P.2d 152 (1967); Sullivan v. Industrial Commission, 7 Ariz.App. 512, 441 P.2d 278 (1968); Altamirano v. Industrial Commission, 12 Ariz.App. 345, 470 P.2d 493 (1970). It is not contended that the medical evidence supporting the Commission's decision is not competent.

The petitioner argues that the testimony of Dr. Bullington is equivocal at best, and that equivocal testimony cannot create a conflict in the evidence. We recognize that this is the law in Arizona in Industrial Commission cases. Belshe v. Industrial Commission, 98 Ariz. 297, 404 P.2d 91 (1965); Rahar v. Industrial Commission, 94 Ariz. 170, 382 P.2d 656 (1963); Helmericks v. Airesearch Manufacturing Co. of Ariz., 88 Ariz. 413, 357 P.2d 152 (1960).

In this case the Commission based its decision on the testimony of Dr. Bullington, and we find his testimony unequivocal. The following questions were propounded to the doctor, and answers made:

"Q Would you say that it was probable that the partial pressure of oxygen and the altitude at the time had a —not perhaps the whole cause but was one of the causes that caused him to have that attack at that time rather than some other time?

"A I would say it was probably one of the causes.

*   *   *   *   *   *

"Q In all of the medical findings, Doctor, is there anything on which you could base a certainty that those activities contributed to this onset?

*   *   *   *   *   *

"A Yes. For example, we know that the heart functions, as all organs do, because of a plentiful supply of oxygen, and anything which reduces the supply of oxygen to the heart can certainly lead to disfunction. Now, a man at 8,500 feet with coronary artery disease, which I am sure he had when he took off at sea level, the supply of oxygen of the air and the partial pressure of oxygen in the air can certainly contribute to the amount of oxygen in the blood stream, which will in turn influence the amount of oxygen to any given area of the heart or any other organ. So knowing these facts about altitude, the partial pressure of oxygen which keeps decreasing as you get higher, I would state that my medical knowledge tells me and long experience in these matters tells me that this particular situation in this particular patient probably contributed in one way or the other to this heart attack. It certainly wasn't the sole thing, by any means, I don't mean to overweight this. But it certainly probably did contribute to his coronary occlusion on that particular day.

"Q But you could not say definitely?

"A No.

*   *   *   *   *   *

"Q Doctor * * * would it be correct to say that this position where this man was at the time of the attack at 8,500 feet in an unpressurized airplane was probably a precipitating or aggravating cause, a contributing precipitating or aggravating cause?

"A It is bound to be one or the other. I think the proper word is probably contributing or aggravating but not causative in itself."

The fact that Dr. Dubnow's testimony may have been expressed more positively than Dr. Bullington's testimony does not make it the duty of the trier of fact to give it more weight than the other.

Almanza v. Phelps Dodge Corporation, 57 Ariz. 150, 112 P.2d 215 (1941). As we have previously stated, the expert testimony is many times less positive and clear in "heart attack" cases, such as this case, than for instance in cases involving a broken arm. Carson v. Industrial Commission, 7 Ariz.App. 372, 439 P.2d 535 (1968).

Our Supreme Court has stated:

"Where, as here, the only expert testimony touching the problem of causation is 'impregnated with substantial uncertainty' and '* * * as a whole it is susceptible of an interpretation that the doctor is speaking more of possibilities than probabilities,' this Court has stated it '* * * cannot require the commission to find a fact on possibilities.' Gronowski v. Industrial Commission, 81 Ariz. 363, 366, 306 P.2d 285, 287; Cross v. Industrial Commission, 81 Ariz. 222, 225–226, 303 P.2d 710, 712–713." Helmericks v. Airesearch Manufacturing Co. of Ariz., 88 Ariz. 413, 416, 357 P.2d 152, 154 (1960).

We, however, are not confronted with this problem as Dr. Bullington did not speak of possibilities, but carefully evaluated the question of causation in terms of probabilities. The qualification of Dr. Bullington's answers with "probable" does not make his testimony fraught with uncertainty or equivocal, but goes to the weight of his testimony.

In our opinion there exists a conflict in the medical evidence.

The award is affirmed.

STEVENS, P. J., and CASE, J., concur.