494 P.2d 743

**Gloria E. OLIVAS, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Arizona Industrial Rags, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 636.**

Court of Appeals of Arizona, Division 1, Department A.

March 9, 1972.

Rehearing Denied April 12, 1972.

Review Denied June 13, 1972.

Langerman, Begam & Lewis, P. A., by Jack Levine, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel State Compensation Fund, by R. Kent Klein, Phoenix, for respondent carrier.

DONOFRIO, Judge.

This case is before us on the petition of Gloria E. Olivas for a writ of certiorari to review a final award of the Industrial Commission of Arizona finding petitioner had no permanent disability as a result of her industrial accident.

Petitioner, who was employed as a rag cutter, suffered an industrial injury on December 18, 1969 while attempting to open a gate to a parking lot at her place of employment. She received a blow on the right side of her upper body, including the upper back, shoulder, arm and back of the head. The same day she consulted a physician, Dr. L. Manoil, who found she had marked tenderness of the entire spine, right rib cage and right shoulder area, with muscle spasm and strain in the cervical area and difficulty in moving her right arm. She was hospitalized on January 30, 1970, and observed by Dr. Manoil and Dr. Stanford Hartman who diagnosed petitioner's condition as an extension thrust injury of the cervical spine with myositis in the upper extremity.

On June 11 petitioner was examined by a board of consultants, and in their report they stated petitioner complained of tenderness in the neck on the left, and that she had some limitation in maneuvers to the left and held her head and neck slightly stiff when she walked. They found that she had a negative neurological examination and a good range of motion of the upper extremities without tenderness over the anterior scalenus region. Their opinion was that petitioner's condition was stationary and that she could be discharged without any permanent impairment.

Thereafter petitioner was discharged by Dr. Manoil on June 18, 1970.

On June 20, 1970 respondent insurance carrier issued its notice of claim status which terminated temporary compensation benefits and medical benefits as of June 18, 1970. Petitioner filed a letter which was considered as a protest and acknowledged as a timely request for a hearing.

On August 5, 1970 petitioner consulted William B. Risley, D.C., because she was unsatisfied with her progress. Dr. Risley's examination revealed that petitioner suffered from an acute traumatic cervical lumbosacral strain with associated myofascitis. She had a loss of grip in her right hand, cervical pain, and splinting and severely limited motion of the cervical spine. In his opinion she was, on the date of examination, "totally, temporarily disabled".

A hearing was held on December 30, 1970. On February 5, 1971 the hearing officer upheld respondent carrier's termination of benefits as of June 18, 1970 which was based on a finding that petitioner's condition as referable to the accident became and remains medically stationary as of June 18, 1970. The Commission on March 26, 1971, on review, affirmed the award of the hearing officer and this appeal followed.

The question is whether the award is reasonably supported by the evidence.

We believe the posture of this case at the time respondent carrier issued its notice of claim status to be important. At that time the file contained the consultation report of June 11, 1970, signed by five medical doctors, which set forth the facts which we have heretofore noted and gave the following opinion which should at this point be emphasized:

"COMMENTS: The examiners feel that this condition the patient complains of is related to the 12–18–69 incident; however she is in need of no further medical treatment at this time.

"It is *felt* that her condition is stationary and that she can be dismissed by her attending physician without any permanent impairment and that she is able to return to work." (Emphasis supplied.)

Obviously this was the entire medical evidence upon which the notice of claim status and the later award was based. The file does not reflect that there was any examination made or contact had with any of the doctors who had seen her in consultation after that date of June 11. In the early part of August she went to Dr. Risley who made an examination of her, including X rays, which he reported to the Commission. We have heretofore stated the pertinent facts of this examination and report.

It was some six months after the consultation report that the hearing in this matter was held before the hearing officer on December 30, 1970. The only doctor testifying was Dr. Risley. The only other witnesses were petitioner and her husband who gave strong evidence of her ill condition.

At this point we quote a few pertinent excerpts from the doctor's testimony:

"Q. Upon looking at her neck, were you able to find any objective findings that were unusual?

"A. Yes, I should have included that. I don't believe I have ever seen such a terrific spasm unilaterally on a patient's neck in my past. At that time, I brought in my office assistant and let her look at it, in other words it was incredible, the fantastic spasm that did exist in her neck at that time.

\*   \*   \*   \*   \*   \*

"Q. BY MR. SILL: Your report in the file, does it summarize the findings?

"A. Pretty well. I think I might not have included such things as degree. For instance, her grip on the right-hand side was significantly less. I had that actually measured and I have on three tries in the right hand with the use of a dynamometer, which is a device to determine grip, there was absolutely no strength at the first try, 20 and 30 on

the second and third tries. On the left side by comparison, she could move the poundage level 145, 130 the second, and 150 the third time. Even though I reported a difference in grip, I don't have on the official report how much difference there was.

\* \* \* \* \* \*

"MR. SILL: Were these symptoms and so on that you observed and described to us today of the nature of being disabling in nature?

"A. Yes."

Dr. Risley's testimony was also to the effect that his diagnosis from the first, and as he treated her, was consistent with the history given and the injuries he understood occurred from the accident.

Petitioner's position is either that her condition worsened after the June 11 examination, or the consultation board failed to correctly evaluate her condition. The Commission, on the other hand, has apparently taken the position that the chiropractor's evidence should be disregarded as not qualified.

A reading of the transcript reveals that Dr. Risley's testimony substantiated the medical and X-ray reports he had previously made. The cross-examination pointed out only that he was a chiropractor, but did not reveal in what respect, if any, the doctor was outside the area of his competency. In such a case we can only assume the doctor's evidence, particularly that which is material to the issues herein, is strictly within the chiropractic field.

Regarding Dr. Risley's competency to testify, the rule is well settled that a chiropractor is a competent witness in his qualified field. Lowman v. Kuecker, 246 Iowa 1227, 71 N.W.2d 586, 52 A.L.R.2d 1380 (1955). See also Ann. 52 A.L.R.2d 1384.

We are unable to see the justice of the situation when a first hearing is had wherein medical evidence under oath is introduced and is unimpeached that petitioner is still suffering from ill effects of the industrial injury and that her condition is not stationary, and a ruling is made by the hearing officer which relies on a consultation report made six months previously in order to find a conflict of evidence from which to conclude that petitioner's condition is stationary and that she is without any permanent impairment.

Ordinarily the Commission is under no duty to order further consultation because it might throw light on a case, Cain v. Industrial Commission, 87 Ariz. 40, 347 P. 2d 699 (1959), but when, as in this case, the consultation report is not couched in terms of reasonable medical certainty and there is in that report statements of tenderness in petitioner's neck on the left, and that she had some limitations in maneuvers to the left and held her head and neck slightly stiff when she walked, the Commission has an obligation not to ignore all the sworn evidence of the hearing without further hearing or medical evidence.

As a rule, such words as "I believe", "I feel", "it is felt" do not detract from the certainty of the statements made at the time. There are times, however, when such cannot be taken as implying certainty without at least some explanation from the persons uttering them that they intended the words to have such meaning. Such, we believe, is the situation here. When the doctors used the words "it is felt" in their consultation report we cannot assume that they unequivocally meant "within reasonable medical certainty" in view of their other statements in the report regarding petitioner's condition.

The Industrial Commission may not arbitrarily disregard the only reasonable inference which can be drawn from the uncontradicted testimony at the hearing in this case that petitioner's condition is not stationary. Gomez v. Industrial Commission, 72 Ariz. 265, 233 P.2d 827 (1951).

If the award cannot be sustained because there is no reasonable basis in the

evidence upon which the Commission could have reached its conclusion, it must be set aside. In re Estate of Bedwell, 104 Ariz. 443, 454 P.2d 985 (1969).

Award set aside.

STEVENS, P. J., and CASE, J., concur.