NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CHAS ROBERTS AIR CONDITIONING, *Petitioner Employer*,

LIBERTY MUTUAL FIRE INSURANCE COMPANY, *Petitioner Carrier*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

FRANCISCO J. LARA, *Respondent Employee*.

No. 1 CA-IC 17-0029
FILED 2-6-2018

Special Action - Industrial Commission

ICA Claim No. 20150-990275
Carrier Claim No. WC608C25541
Marceline A. Lavelle, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Lundmark, Barberich, LaMont & Slavin, P.C., Phoenix
By Kirk A. Barberich; Danielle S. Vukonich
*Co-Counsel for Petitioners Employer and Carrier*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent*

Law Offices of Robert E. Wisniewski, P.C., Phoenix
By Robert E. Wisniewski
*Counsel for Respondent Employee*

---

**MEMORANDUM DECISION**

Judge James P. Beene delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Peter B. Swann joined.

---

**B E E N E**, Judge:

**¶1**         This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review for continuing medical benefits.  One issue is presented on appeal: whether any reasonable theory of the evidence supports the administrative law judge's ("ALJ") award.  Based on the ALJ's resolution of the medical conflict, reasonable evidence of record supports the award and we affirm.

### JURISDICTION AND STANDARD OF REVIEW

**¶2**         We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2), 23-951(A), and Arizona Rule of Procedure for Special Actions 10.  In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings but review questions of law *de novo*.  *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003).  We consider the evidence in a light most favorable to upholding the ALJ's award.  *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

### FACTS AND PROCEDURAL HISTORY

**¶3**         At the time of his industrial injury, the respondent employee ("claimant") worked as a residential HVAC technician for the petitioner employer, Chas Roberts Air Conditioning ("Roberts").  He slipped while descending an attic ladder, caught himself with his left arm, and injured his left shoulder.  The claimant filed a workers' compensation claim, which was accepted for benefits.  He received both conservative and surgical medical treatment for a torn left rotator cuff.

**¶4**         Following rehabilitation, the claimant's surgeon, Steven R. Kassman, M.D., found him medically stationary with no permanent impairment, and no need for supportive medical care.  Based on Dr.

Kassman's report, the petitioner carrier, Liberty Mutual Fire Insurance Company ("Liberty Mutual") issued a notice of claim status ("NCS") closing the claimant's claim for active medical treatment and finding him stationary with no permanent impairment. The claimant timely protested and requested an ICA hearing.[1] The ALJ held three hearings and heard testimony from the claimant, Sanjay R. Patel, M.D., and Evan Lederman, M.D.

¶5          The claimant testified that his left shoulder improved after surgery but not completely. He stated that he was unable to keep his left arm in one position or to use it repetitively without getting burning pain that lasted all day. In addition, lifting his arm above shoulder level caused pain. Although the claimant was able to return to full time light duty work as a delivery driver for Roberts, he did not believe that he was physically able to be an HVAC technician.[2]

¶6          The claimant testified that when he last saw Dr. Kassman in December 2015, he told him about his ongoing left shoulder problems, but the doctor reported that he could return to his regular work. The claimant stated that he also described his shoulder symptoms to Dr. Lederman in May 2016, but he also reported that he could return to regular work. When the claimant saw Dr. Patel, Dr. Patel provided him with industrially-related work restrictions. These included lifting limitations of 25 pounds from floor to waist, 15 pounds from waist to shoulder, and no lifting above the shoulder.

¶7          The claimant testified that he was in a motor vehicle accident on October 2, 2015, and sustained a neck injury. He underwent MRI scans of his neck, middle, and lower back and treated with a chiropractor. The claimant stated that he did not injure his left shoulder in the accident, and he is no longer receiving treatment for the neck injury.

¶8          Dr. Patel examined the claimant, authored a report, and performed a physical capacities evaluation. He received a history of the

---

[1]     Prior to the hearing, the parties stipulated that the claimant had sustained an industrially-related unscheduled permanent partial impairment and that he was entitled to receive supportive medical maintenance benefits. Therefore, the sole issue at hearing was whether the claimant had industrially-related work restrictions.

[2]     Delivery drivers earn $10 per hour versus $18 per hour for HVAC technicians.

industrial injury and reviewed the claimant's industrially-related medical records, although he did not receive Dr. Lederman's independent medical examination ("IME") report. Dr. Patel recorded the claimant's complaints as left shoulder pain and burning that was worsened by repetitive or overhead use of his left arm.

¶9 Dr. Patel's physical examination of the claimant revealed asymmetric shoulder heights and decreased strength and range of motion in the left upper extremity. The doctor stated that the claimant's complaints and examination findings were consistent with the industrial injury and failure of the arthroscopic surgery to restore the claimant to his pre-injury state. It was his opinion that the claimant had permanent functional restrictions of the left upper extremity including lifting limitations and repetitive overhead use.

¶10 Dr. Patel was asked a number of questions regarding Dr. Lederman's IME report to ensure that he had all necessary information to provide his opinion. On cross-examination, the doctor was asked about the claimant's cervical injury and its potential impact on his shoulder complaints:

> Q. [By Mr. Barbarich] And Dr. Lederman was concerned about a cervical problem perhaps causing this gentleman's complaints. Did you have the opportunity to review any cervical spine radiographs or MRIs?
>
> A. [Dr. Patel] I did not, no.
>
> Q. And he went on to say in his report that there was a motor vehicle accident and that he elicited significant positive cervical findings and that he thought that there was documentation of herniated discs at multiple levels and corresponding with the deterioration of his function.
>
> Is it possible that at least some of his complaints and issues involving the use of his left upper extremity could be related to a cervical condition that you have not yet evaluated?
>
> A. Certainly, you know, shoulder conditions, it can result from, you know, undiagnosed, for example, radiculopathies and things like that, so it is - - Again, I haven't looked at the cervical condition.

He didn't have any evidence of radiculopathy on my exam, meaning his reflexes were good, his sensation was good in all the distributions that I tested. So at least on my exam I didn't see evidence of cervical radiculopathy, but certainly an undiagnosed cervical radiculopathy can cause ongoing issues in an extremity.

¶11 Dr. Lederman, a board certified orthopedic surgeon who limits his practice almost exclusively to the shoulder, testified regarding his IME of the claimant. He received a history of the industrial injury, rotator cuff tear, surgery, and rehabilitation. The doctor stated that the claimant complained of "left shoulder pain, burning down the lateral aspect of his arm, pain in the posterior scapular region, [and] weakness in his shoulder."

¶12 On physical examination, Dr. Lederman found limited range of motion in the cervical spine and left shoulder, pain with elevation and abduction of the shoulder, grip strength weakness, and generalized weakness below the shoulder. He noted both that most of the claimant's symptoms were subjective, and he thought that they could be related to a spinal issue. The doctor testified that he was familiar with an HVAC technician's job duties, and it was his opinion that the claimant could return to his regular work without restrictions.

¶13 Dr. Lederman testified that when he viewed the claimant's left shoulder MRI scans on the imaging facility's website, he found that the claimant appeared to have been in a motor vehicle accident and had undergone MRI scans of his cervical, thoracic, and lumbar spine. When he asked the claimant about this, the claimant was evasive and refused to confirm that he had been in an accident or had scans performed. Dr. Lederman stated that the cervical MRI showed significant degenerative changes and a left-sided disc herniation at C5-6, where nerves go into the shoulder. He noted that if these nerves were affected, it could cause shoulder pain, medial scapular pain, arm pain, and decreased arm function.

¶14 Dr. Lederman testified that if the cervical MRI belonged to the claimant, he should be evaluated by a cervical specialist, because the cervical injury could be a major factor in his ongoing pain complaints. Without this additional clinical evaluation, the doctor stated that he had insufficient information to state whether the cervical injury is contributing to the claimant's ongoing arm pain.

¶15 Following the hearings, the ALJ entered an award for continuing benefits. Liberty Mutual timely requested administrative

review, but the ALJ summarily affirmed the award. Liberty Mutual next brought this appeal.

## DISCUSSION

¶16        The issue on appeal is whether the ALJ erred by finding that the claimant had industrially-related physical limitations that precluded his return to his regular work. In that regard, the ALJ adopted Dr. Patel's medical opinion and his recommended limitations for the claimant. Liberty Mutual argues that the ALJ committed reversible error because she found Dr. Lederman's opinion legally insufficient to establish a causal relationship between the claimant's symptoms and the nonindustrial motor vehicle accident.

¶17        Medical opinions must be stated to a reasonable medical probability. *Olivas v. Indus. Comm'n*, 16 Ariz. App. 543, 546 (1972). Probability has been defined to be something more than fifty percent. *See, e.g., State Comp. Fund v. Indus. Comm'n*, 24 Ariz. App. 31, 36 (1975). An award cannot be "based solely upon possibilities and speculative testimony." *Id.* at 37. The failure to use "magic words" will not necessarily be fatal to a doctor's opinion, but in the absence of such direct testimony, we will thoroughly and carefully review the medical testimony for its meaning. *Skyview Cooling Co. v. Indus. Comm'n*, 142 Ariz. 554, 559 (App. 1984).

¶18        In this case, Dr. Lederman stated on several occasions that the claimant's cervical injury could be responsible for some of his ongoing complaints of pain, but declined to make this connection without an additional evaluation by a cervical spine specialist.

Q. [By Mr. Barbarich] You think that it's medically probable that his ongoing problems or at least some of his ongoing problems are related to the cervical spine?

A. [Dr. Lederman] If, in fact, that scan is his, then he has a cervical spine issue that should be evaluated by a cervical specialist.

* * * *

Q. [By Mr. Puig] Dr. Lederman, you are not able to say here to a reasonable degree of medical probability that there is a cervical condition causing the symptoms presented to you; is that correct?

A. [Dr. Lederman] Well, it depends on whether this is truly his MRI or not. He has very positive findings. I was concerned based on his limited cervical spine range of motion on my examination, and his weakness . . . in muscles that don't involve the shoulder, and my impression was that he might have a cervical spine condition and should be evaluated.

I - - I don't know how to process the fact that he was not forthcoming with me about whether or not it was his. I think it would be very easy to deny it if it wasn't his. But they were very evasive about these questions, which brings in - - his entire subjective complaints of pain into question.

So I'm looking for you gentlemen to tell me whether that was his scan or not. If it is, he's got a problem and he should be evaluated for it. And that may very well be a major factor in why he's having subjective complaints of pain.

We read the doctor's testimony to mean that without having a specialist evaluate the claimant's cervical spine, he has insufficient information to allow him to causally relate the claimant's pain complaints to his neck injury. While we agree that Dr. Lederman testified that he had expressed his opinions to a reasonable medical probability, he refused to express any opinion on this particular issue.

¶19　　　　　Conversely, Dr. Patel opined that the claimant had industrially-related physical restrictions that precluded his return to his regular work. When asked about whether the claimant's symptoms could be related to an undiagnosed cervical radiculopathy, the doctor acknowledged that it was possible, but he went on to state that he found no evidence of radiculopathy during his physical examination.

¶20　　　　　Unless the claimant's physical condition and its causal relationship to the industrial injury are readily apparent, it must be established by expert medical testimony. *Cont'l Cas. Co. v. Indus. Comm'n*, 15 Ariz. App. 565, 566 (1971). When expert medical testimony conflicts, it is the ALJ's duty to resolve those conflicts. *See Perry v. Indus. Comm'n*, 112 Ariz. 397, 398 (1975). Here, the ALJ adopted Dr. Patel's testimony, and we perceive no basis to disturb that finding.

**CONCLUSION**

¶21  For the foregoing reasons, we affirm the award.



AMY M. WOOD • Clerk of the Court
FILED: AA