439 P.2d 535

**Earline M. CARSON, widow of Ernest Lee Carson, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona; Transport Indemnity Company and Milne Truck Lines, Incorporated, Respondents.**

**No. I CA–IC 159.**

Court of Appeals of Arizona.

April 8, 1968.

Rehearing Denied May 13, 1968.

Review Denied June 18, 1968.

Evans, Kitchel & Jenckes, by Earl H. Carroll, Phoenix, for petitioner.

Donald J. Morgan, Phoenix, for respondent Milne Truck Lines, Inc.

CAMERON, Chief Judge.

This case is before the Court by writ of certiorari granted on petition of the widow of Ernest Lee Carson, deceased employee, to review the lawfulness of an award for noncompensable claim entered by the Commission on 5 July 1967.

We are called upon to determine whether the facts before the Commission reasonably support the finding of the Commission that the decedent did not die as a result of an incident arising out of and in the course of his employment.

The facts are not disputed. At the time of his death, decedent was employed by respondent Milne as a truck driver on a scheduled line haul common carrier operation. On the evening of 30 September 1964 decedent was driving a semi-truck and attached trailer from Phoenix to a point near Desert Center, California, where he was scheduled to meet a similar rig coming from the Los Angeles, California, area, exchange equipment, and return to Phoenix.

Soon after leaving Phoenix, decedent commenced to suffer pain which he felt came from a gastro-intestinal upset. He told the witness Wilfree Chavez (a Motor Vehicle Inspector of the Arizona Highway Department) that he had stopped several times to obtain an antacid, Tums. He continued driving the truck for approximately three hours until he reached Ehrenberg, Arizona, at the Arizona-California border.

The truck decedent was driving was a 1959 International Cabover, clutch operated, with 10 speeds forward. The access to the cab was gained by attaining a high step, stepping onto the fender, and then into the cab. The truck had power brakes, but no power steering or refrigeration, and the driver was riding directly over the front axle. Two sections of the highway over which the decedent drove that evening were under construction, and "a little bit rough in some spots". Decedent was alone in the truck which was not equipped with two-way radio.

Decedent, prior to leaving for work on 30 September 1964, was neat and was dressed in clean work clothes. Subsequent to his heart attack it was discovered that decedent's hands and clothes were greasy.

The decedent reached the Ehrenberg checking station at approximately 11:15 p. m. He went through the station and drove a short distance further where he parked the truck at a gas station. He was found in obvious pain and distress by Wilfree Chavez a few minutes after midnight. Decedent was taken to the Blythe Hospital and died two days later of a myocardial infarction. No autopsy was performed.

A widow's claim for compensation was filed 13 September 1965 alleging that the decedent's death on 3 October 1964 was caused in whole or in part by his employment as a truck driver for Milne. An award for noncompensable claim was issued in December 1965 and was timely protested. Three hearings were held in the matter, and the referee filed a report on 10 May 1967 which stated:

"That the applicant's deceased husband died as a result of a myocardial infarction which was aggravated by the activities of his employment."

On 5 July 1967 the Commission entered a second findings and award for noncompensable claim finding:

"1. That the decedent did not die as a result of an incident arising out of and in the course of his employment.

"2. That by virtue of the premises, no benefits are payable under the Arizona Workmen's Compensation Law."

A timely petition to this Court for a writ of certiorari followed, and we are called upon to determine if the award and findings of the Commission are reasonably supported by the evidence.

At the hearing the decedent's attending physician was outside the continental United States and did not testify. The physician who signed the death certificate was a Blythe, California, resident, and did not respond to a request that he attend a hearing held (for his convenience) at Ehrenberg, Arizona, just across the border from Blythe. The only medical witness was Dr. Joe Ehrlich, a cardiology specialist practicing in Phoenix, Arizona. Dr. Ehrlich testified that he had neither treated nor seen the decedent. His opinion was based upon facts given him in a hypothetical question. Dr. Ehrlich was of the opinion that the pain decedent suffered shortly after leaving Phoenix, which the decedent attributed to a gastro-intestinal upset, was in fact a symptom of a myocardial infarction. The doctor states that it was his opinion that the continued driving after the onset of the pain aggravated decedent's

heart disease. In response to a hypothetical question which recited the facts substantially as have been presented here, he testified as follows:

Mr. Carroll:

"Q Assuming all these facts are true, do you have an opinion whether the gas pains and discomfort reported by Mr. Carson as having shortly after he left Phoenix in driving to Ehrenberg were related to the onset of the myocardial infarction?

"A Yes, sir.

"Q What is the opinion?

"A The opinion would be that in retrospect the attacks of indigestion and gas pains he referred to as his symptoms proved to be a myocardial infarction.

"Q What are the reasons?

"A This is a very common chain of events.

"Q Assuming all the facts as given you were true, do you have an opinion whether it is probable that the continued driving of the truck after the onset of the pain aggravated his disease?

"A Yes, and I think it did.

"Q What are your reasons?

"A The fact that doing any sort of work would impose an extra workload on an already seriously damaged heart muscle.

"Q Based on the same assumptions in the question, is it probable in your opinion that such aggravation would increase the chance of a fatal outcome from such a disease?

"A Yes, sir.

"Q What are the reasons for that opinion?

"A The ones I have just stated, that you have an acutely seriously damaged heart muscle and you are imposing an extra workload on it."

On cross-examination he was asked, and answered as follows:

Mr. Morgan:

"Q Isn't it a fact, Doctor, that in schools such as you are familiar with, in the study of cardiovascular disease is it not considered that any particular usual exertion that a man is accustomed to doing most of his working life is not a direct cause of death in such cases?

"A I don't think that is quite right. I think it is certainly my strong belief that the usual work a man does will not precipitate the onset but once the infarction has occurred the continuation of that work will certainly make it worse."

In the so-called "heart attack" cases such as the matter before this Court the factual background as well as the expert evidence is many times less positive and clear than, for instance, a broken arm or leg, and our Supreme Court has stated in discussing a coronary occlusion:

"It is obvious * * * that no hard and fast rule can be laid down that governs all situations as each case must be determined upon its own peculiar facts. However, * * * there must be a recognizable causal connection between an employee's employment and the accidental injury." Jones v. Industrial Commission, 81 Ariz. 352, 356, 306 P.2d 277, 279 (1957).

And went on to say in discussing the testimony of the medical doctor who performed the autopsy:

"It should be noted that the testimony of Dr. Marlowe is the only medical evidence in the case. As is shown by the above questions, the doctor did not waver in his opinion or conclusion that the physical exertion of decedent immediately prior to his demise contributed to the cause of his heart attack and death, i. e., that it aggravated his disease and hastened or accelerated death. We submit that the question of the causal relationship between the accident and death was necessarily within the singular knowledge of medical experts; in such case their

findings are conclusive upon the commission. (citations omitted) The commission is not allowed to substitute its judgment on matters lying exclusively within the field of medical science. Yet that is exactly what has been done in the instant case, for the findings of the commission are a complete repudiation of the only medical evidence in the record." Jones v. Industrial Commission, supra, page 358, 306 P.2d page 281.

■ In this case the only medical testimony was that of Dr. Ehrlich in whose opinion the continuation of the driving in which the decedent was employed constituted an aggravation of the myocardial infarction and increased the likelihood of its being fatal. The Commission is not allowed to substitute its judgment on matters lying exclusively within the field of medical science. Sandoval v. Industrial Commission, 3 Ariz.App. 449, 415 P.2d 463 (1966). Our Supreme Court has stated:

"Where a worker died from a heart attack, if his activity on the job precipitated the heart attack, or accelerated death, the petitioner meets the burden of proving the causal connection between his employment and the decedent's death." Russell v. Industrial Commission, 98 Ariz. 138, 402 P.2d 561, 564 (1965).

And Larson's Workmen's Compensation Law points out that if the employee feels compelled to continue with his duties when, but for these duties, he could and would have gone somewhere to lie down at once, the causal contribution of the employment to the aggravation of the condition is clear. LARSON, § 38.64 (C) 622.7, 622.8. We believe that in this case the continued driving after the onslaught of the symptoms of the myocardial infarction was established by the medical testimony which stated that the continued driving, after the symptoms which were established to the doctor's satisfaction that a myocardial infarction had occurred, aggravated decedent's condition and increased the chance of a fatal outcome. The resulting death was there-fore causally connected to conditions of decedent's employment and accidental within the meaning of the Workmen's Compensation Act.

■ The respondent employer argues that the decedent continued driving of his own choice following the occurrence of symptoms, alleging that this takes the accident out of the course and scope of employment. The decedent told the witness Chavez that his distress started a short time after he left Phoenix. From the record before us it appears that the decedent had no history of heart disease, and that he did not recognize the symptoms he experienced as being those of a "heart attack". He continued driving and performing the duties of his employment. The question of whether or not he could have stopped driving or could have in good conscience abandoned the equipment by the side of the road does not arise in this fact situation. The record shows that he did not stop driving. Our Supreme Court has stated:

"In order to establish a compensable claim petitioner must sustain the burden of proving a recognizable causal connection between his employment and the accidental injury, or more specifically in a case such as this, he must sustain the burden of proving that the exertion of his job precipitated the heart attack. See Jones v. Industrial Commission, 81 Ariz. 352, 306 P.2d 277. This fact must be the only possible inference drawable from the evidence in order for us to set aside the award denying compensation." Hudgens v. Industrial Commission, 83 Ariz. 383, 384, 321 P.2d 1039, 1040 (1958).

The evidence before the Commission is such that the only rational conclusion that may be drawn from the evidence presented is that the decedent died as the result of an accident causally related to his employment.

Award set aside.

DONOFRIO and STEVENS, JJ., concur.