469 P.2d 473

Vincent L. CARABETTA, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Blakely Oil Company of Arizona, Respondent Employer,

The Travelers Insurance Company, Respondent Insurance Carrier.

No. I CA–IC 344.

Court of Appeals of Arizona, Division 1, Department B.

May 21, 1970.

Lawrence Ollason, Tucson, for petitioner.

Donald L. Cross, Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Spaid, Fish, Briney & Duffield, by Michael C. Young, Tucson, for respondent employer and respondent insurance carrier.

HAIRE, Judge.

This appeal by certiorari from an award of the Industrial Commission involves a fact situation wherein certain .shoulder,

arm, wrist and hand injuries (hereinafter referred to as the New York injuries) occurred as a result of a fall allegedly caused by a prior industrial injury to the petitioner's knee, which left it in a weakened condition. The Commission took the position that the petitioner was not entitled to any compensation or medical benefits for disability resulting from the New York injuries, and we are called upon to decide the correctness of that determination.

The injured employee, Carabetta, was first injured on August 6, 1966, when the handle of a tire tool struck his left knee. At that time he lost only one day's work because of the injury. The initial report of the attending physician, Dr. Brickler, diagnosed the injury as traumatic bursitis of the left knee. Treatment given at that time included aspiration of fluid, untrasound, and the prescribing of a knee support. The initial report also indicated a need for further treatment for an additional period, undetermined at that time. The Commission file reveals that Carabetta made weekly visits to Dr. Brickler after the August injury until October 3, 1966. The treatments given included additional aspiration of fluids, electrical stimulation, and ultrasound.

On October 3, 1966, Dr. Brickler requested consultation with Dr. E. A. Lichwa, an orthopedic specialist. Carabetta was examined by Dr. Lichwa on October 25, 1966. Dr. Lichwa's report, dated November 1, 1966, indicates Carabetta's complaint, among others, that his left knee gave way at times. The report concludes that "[i]t is felt that the patient's symptoms of buckling have their origin in the atrophy of the quadriceps muscles." Dr. Lichwa's specific recommendation was " * * * that the patient discontinue using all forms of knee supports and be started on a vigorous regime of quadriceps exercises of increasing severity. No other treatment other than casual observation by his attending physician is recommended."

Shortly thereafter, on November 7, 1966, Carabetta again saw Dr. Brickler, the attending physician. The bill submitted by Dr. Brickler for the November 7th visit indicates only that the patient was "rechecked" and does not indicate any treatment given. At a subsequent hearing, Dr. Brickler testified that he did not consider Carabetta's injury stationary at that time, and in answer to a question concerning the need for continued treatment, Dr. Brickler answered, "He was to continue to wear the support and the exercises."

Some time after the November 7, 1966 appointment with Dr. Brickler, but still in the month of November, Carabetta went to New York to visit his mother who had suffered a heart attack. The record does not reflect how long he stayed in New York on that trip. In any event, he was back in Arizona in early January 1967 when he was notified that his mother had passed away. He then flew to New York to go to his mother's wake and burial. While in New York on January 13, 1967, and while climbing a short flight of stairs to his mother's tomb, he fell and incurred the previously mentioned "New York" injuries. Concerning the cause of this fall, Carabetta testified as follows:

"A   Just a walk up the stairs on the walk-up, and on the second incline my knee just—and down I come.

"Q   You snapped your fingers. What do you mean by that?

"A   My knee just snapped right out from under me.

"Q   What happened to you?

"A   Fell down, bruised my right shoulder, which consisted of a fracture, right arm, and humerous [sic], and scraped the whole right side of my face.

"Q   Did anything happen to your knee or leg?

"A   Just that it swelled up again.

"Q   And where did you go from there?

"A   To the Veteran's Administration Hospital.

\*       \*       \*       \*       \*       \*

"Q   Were you carrying anything at the time?

"A   No, sir.

"Q   When this happened?

"A   No, sir.

"Q   Just walking by yourself?

"A   By myself.

"Q   Down the stairs?

"A   Up some stairs.

"Q   How many stairs were there?

"A   If I recollect there was four or five on the first level, and little walk of a couple of feet, and then four or five more up to the tomb.

"Q   And where on the steps did this happen?

"A   I was on the extreme left side going up the steps.

"Q   Were you on the second level of steps?

"A   On the second level.

"Q   And how did you fall?

"A   Right off.

"Q   You mean off?

"A   Right off the steps, completely, right down.   I was on the extreme left side of the steps when my knee gave.   I just went over and fell down.

"Q   You went over?

"A   Yes, sir.

"Q   You didn't fall down the steps then?

"A   No, sir, I just fell off.

"Q   Fell off the side of the steps?

"A   Yes, sir.

"Q   And you landed on your—

"A   Right shoulder and face."

■   Under the circumstances here involved, there being no evidence of any negligent conduct or fault on the employee's part which led to the subsequent injury, it is well established that where a weakened member such as a leg contributes to a later fall or injury, such later fall or injury

is a compensable consequence of the prior industrial injury.   See 1 A. Larsen, The Law of Workmen's Compensation § 13.12 (1964) ;  Kelly v. Federal Shipbuilding & Dry Dock Co., 1 N.J.Super. 245, 64 A.2d 92 (1949) ;  Unger & Mahon, Inc. v. Lidston, 177 Md. 265, 9 A.2d 604 (1939) ;  Continental Casualty Co. v. Industrial Commission, 75 Utah 220, 284 P. 313 (1929).

From an examination of the Commission file it is readily apparent that the Commission's refusal to consider compensating petitioner for any disability resulting from the New York injuries was based upon an alleged violation by Carabetta of the Commission's Rule 60.[1]  Rule 60 reads as follows:

"No employee may leave the state of Arizona or the locality in which he is receiving treatment while the necessity of having medical treatment continues, without the written approval of the Commission.   Any employee leaving the state of Arizona or the locality in which he is receiving medical treatment without such approval will forfeit his right to compensation during such time, as well as his right to reimbursement for his medical expenses;  and any aggravation of his disability, by reason of the violation of this Rule, will not be compensated."

Admittedly Carabetta did not seek or receive the written approval of the Commission before any of his trips to New York, and specifically before flying to New York for his mother's funeral.   Counsel for Carabetta urges that Rule 60 is unconstitutional, citing Adkins v. Industrial Commission, 95 Ariz. 239, 389 P.2d 118 (1964). However, we do not deem it necessary to consider the constitutional question because, even if we assume its violation by Carabetta, in our opinion Rule 60 does not apply so as to preclude Carabetta from receiving compensation benefits for the New York injuries.

---

1.  This case was decided under the law as it existed prior to January 1, 1969.   The substance of Rule 60 is now codified in A.R.S. § 23–1071.

The sanctions imposed for the violation of Rule 60 are, by its terms, as follows:

(1) The violator forfeits "his right to compensation during such time [while outside this state]";

(2) He forfeits "his right to reimbursement for his medical expenses" during such time; and

(3) He will not be compensated for "any aggravation of his disability by reason of the violation of this rule."

Since petitioner does not seek to recover any compensation or medical expenses for the time he was in New York, sanctions (1) and (2) above are not here involved. The only sanction possibly applicable to his attempt to obtain compensation benefits for the period after he returned to Arizona, is sanction (3) above. However, in order for this sanction to be applicable, it must appear that his disability was aggravated "by reason of the violation of this rule", that is, by reason of Carabetta's being out of the state without Industrial Commission approval. We believe that the aggravation referred to is such aggravation of the knee as might result from a lack of, or improper medical treatment in the foreign jurisdiction. The record is completely devoid of any evidence from which it can be inferred that if Carabetta had not flown to New York for his mother's funeral, his knee would have been in any better or worse condition. Conversely, there is nothing to indicate any activity of Carabetta in New York before the accident which affected his knee in any way. His knee could have "buckled" in Arizona in exactly the same manner that it did in New York, and the fact that he was in New York without Industrial Commission approval had no bearing one way or the other. As Dr. Brickler testified, it was quite probable that Carabetta's knee might collapse while going up and down stairs:

"Q And I have told you what happened to him in New York in January of '67. Would you say that this type of a knee would be subjected to that type of an accident?

"A You mean, say, if he is going up and down stairs or something, the knee would give way?

"Q Yes.

"A This is probable.

"Q And would this be consistent within a reasonable medical probability so far as a knee like this is concerned?

"A Yes, sir."

■ In our opinion there has been no showing of any aggravation of petitioner's injury by reason of the claimed violation of Rule 60. Because of this, we do not consider petitioner's further contention that at the time he left Arizona, the "necessity of having medical treatment" (see Rule 60, *supra*) had ceased, and that therefore Rule 60 was not applicable so as to require him to obtain Commission approval before leaving.

■ The respondent employer and insurance carrier urge that "[t]he only evidence indicating a causal relationship between the petitioner's industrial knee injury of August 6, 1966, and his subsequent fall in New York is the uncorroborated testimony of the petitioner." From this the respondents then argue that the Commission could reject this testimony of the petitioner. We recognize that there are many Arizona decisions, involving both workmen's compensation and civil actions which state as a general proposition that the trier of fact may disregard the uncorroborated testimony of an interested party. However, an examination of these decisions shows that they do not stand for the proposition that the trier of fact may arbitrarily and without reason reject such testimony. In these cases the testimony of the interested party was either in the nature of opinion evidence or there was some other evidence before the court which cast suspicion or created doubt concerning the testimony of the interested party. As stated in Stanley v. Moan, 71 Ariz. 359, 361, 227 P.2d 389, 391 (1951):

"While it is the law that the commission may reject the testimony of an interested

witness, it likewise is the law that it may not arbitrarily reject uncontradicted evidence when nothing intrinsic in the evidence itself or extrinsic in the circumstances casts suspicion thereon, Bragg v. Industrial Commission, 71 Ariz. 37, 223 P.2d 180; In re Gary's Estate, 69 Ariz. 228, 211 P.2d 815."

We think the rule is correctly summarized in M. Udall, Arizona Law of Evidence § 3 at 10 (1960), as follows:

"As a general rule the jury or other trier of fact is the sole judge of the witnesses' credibility and is not required to accept the evidence of an interested party, even though uncontradicted. But this general principle is qualified by several important exceptions. The trier of fact may not arbitrarily reject uncontradicted evidence of a party when nothing intrinsic in the evidence itself or extrinsic in the circumstances casts suspicion upon it. Nor may it be rejected where it is corroborated by a disinterested witness or an independent document." (Footnotes omitted).

In the case at hand, there are no circumstances which cast doubt on Carabetta's testimony concerning the cause of his New York fall. Dr. Lichwa's report indicates that prior to the New York trip Carabetta was complaining concerning his knee "buckling" or "giving away". After Carabetta's return from New York and during the Commission hearing concerning these injuries, Dr. Brickler testified as to the medical probability that the knee could give way as claimed by Carabetta while going up or down stairs. The report of the Veteran's Hospital physician and the Department of Public Welfare are completely silent as to whether or not petitioner gave any explanation of the reason for his New York fall—they merely indicate that the injuries were caused by a fall down the stairs at the tomb.

■ We recognize that the Commission is the trier of fact and that its decisions cannot be disturbed where there is a conflict in the evidence. However, here there is no conflict. Under all the circumstances previously set forth above, we do not believe that the Industrial Commission could arbitrarily disregard Carabetta's testimony. Nor are we convinced that the Commission intended to do so. It appears to us that the Commission actually based its denial of industrial responsibility for the New York injuries on the application of its Rule 60, rather than upon a factual determination that the weakened knee did not contribute to the fall.[2]

In our opinion any disabilities flowing from the New York injuries are compensable consequences of the prior industrial injury, and must be considered by the Commission in making its award.

The award of the Industrial Commission is set aside.

EUBANK, P. J., and JACOBSON, J., concur.

2. Findings No. 3 and No. 4 of the Findings and Award of October 10, 1967, read as follows:

"3. That at the time the claimant left the State of Arizona he neither requested nor received the permission of The Industrial Commission thereby violating Rule 60 of the Rules of Procedure before the Industrial Commission thereby forfeiting his right to compensation, medical expenses, and any compensation for aggravation of his disability occurring during said period of violation.

"4. That there is no industrial responsibility for the injury to the claimant's right shoulder or any other condition which the claimant may have sustained as a result of said injury of January 13, 1967."

There was never any specific finding made by the Industrial Commission concerning the cause of the New York fall.