501 P.2d 555

Opal McNEELY, In re Billy W. McNeely, Deceased, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Reynolds Metals Company, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 10934–PR.

Supreme Court of Arizona, In Banc.

Oct. 6, 1972.

Rehearing Denied Oct. 31, 1972.

Chris T. Johnson, Phoenix, for petitioner.

Porter, Stahnke & Phillips by Bernald C. Porter, Tempe, for respondent employer.

William C. Wahl, Jr., Chief Counsel, The Industrial Comm. of Ariz., Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, for respondent carrier.

CAMERON, Vice Chief Justice.

This is a petition for review of a decision and opinion of the Court of Appeals, Division One, Department B, which affirmed a finding and award of the Industrial Commission of Arizona denying benefits to the surviving wife and children of Billy W. McNeely.

We are called upon to determine whether the Industrial Commission of Arizona may deny compensation where it is found that even though the work contributed to

the injury that the contribution was "not material."

The facts necessary for a determination of this matter on appeal are as follows. The deceased, Billy McNeely, first started working for the respondent, Reynolds Metals Company, in 1948 and worked continuously for them until his death on 19 January 1969. He was employed as a maintenance mechanic and his duties were described by his co-employees as heavy in nature. At the time of his death, his work required him to change tires ranging in weight from 50 to 350 pounds several times a week and also required that he climb 60 to 100 feet to repair cranes used in the Reynolds Metals plant.

He had no previous history of heart disease. He saw the company doctor on 31 December 1968 complaining of chest pains on heavy lifting or exertion. The doctor felt that the pains were a symptom of heart disease and prescribed nitroglycerin tablets and allowed the deceased to return to work. On 6 January 1969, he was seen at the plant by a nurse complaining of indigestion and he also sought at this time to see his own family doctor. On Wednesday, 15 January 1969, it is believed deceased suffered a myocardial infarction. This was not reported to the plant nurse or doctor. Deceased worked on Wednesday, Thursday and Friday. The next day while returning from a drug store where he had gone to get some medication for indigestion, he suffered a heart attack which resulted in his death.

Hearings were held at which the medical testimony was elicited from medical experts in cardiology and pathology as well as respondent's company doctor and decedent's personal doctor. The referee made the following findings of fact:

"FINDINGS

"1. The decedent, Billy W. McNeely, died on January 19, 1969 as the result of a myocardial infarction.

"2. There is a conflict in the evidence as to when the infarction occurred.

Dr. Nicholas Grenfell, who performed the autopsy, opined that the infarction occurred three to four days prior to death. Dr. Thomas Jarvis, who examined microscopically, four slides of heart tissue taken at autopsy and preserved, was of the opinion that the infarction occurred twenty four hours prior to death, and Dr. Gerald Marshall, an independent examiner appointed by the Industrial Commission, was of the opinion that there actually were two infarctions, the first occurring about four days prior to death and the second occurring within twenty four hours of death.

"3. Dr. Marshall's opinion provides the most reasonable explanation of the conflict between Drs. Grenfell and Jarvis; it is hereby found as a fact that the decedent sustained a myocardial infarction on or about Wednesday, January 15, 1969.

"4. Decedent continued to work at his regular job, eight hours per day, on Wednesday, Thursday and Friday, January 15, 16 and 17, 1969.

"5. Decedent sustained a second myocardial infarction on Saturday evening, January 18, 1969, as he was driving his automobile home from the drug store, and died approximately 24 hours later, on January 19, 1969.

"6. The infarction which occurred on or about Wednesday, January 15, 1969 was the result of the natural progress of applicant's preexisting coronary artery disease combined with a congenitally small right coronary artery. Although applicant's work was strenuous, applicant had been performing his regular work up to the time of this initial infarction, and the work was neither a factor in the genesis of the coronary artery disease nor in precipitating the infarction.

"7. The medical evidence indicates that by continuing to work on Thursday and Friday, January 16 and 17, 1969, the

applicant aggravated or worsened his heart damage and accelerated his death.

\* \* \* \* \* \*

"9. During the period of time here in question, the decedent was living at home and traveling to and from work every day. Continuing to work following the myocardial infarction of about January 15, 1969 was purely voluntarily, and the aggravation caused thereby does not constitute an accident within the meaning of the Workmen's Compensation Act.

"10. Considering the fact that the infarction of January 15, 1969 was non-industrial, and that by voluntarily continuing to work, applicant aggravated this condition, there does not appear to be the required 'act' for which the applicant could have applied for relief had there been no (pre-existing) disease. Applicant has therefore not sustained an accident within the meaning of the Workmen's Compensation Act. Aluminum Company of America v. Industrial Commission of Arizona, 61 Ariz. 520, 152 P.2d 297 (1944); Reveles (sic) v. Industrial Commission of Arizona, 88 Ariz. 67, 352 P.2d 759 (1960); both citing 6 Schneider: Workmen's Compensation Text, § 1542(i), p. 73.

"11. As indicated by autopsy, Billy W. McNeely suffered from a severe pre-existing heart condition. His right coronary artery was congenitally small, placing a heavier load on the left, and the left coronary artery was ninety percent (90%) occluded due to atherosclerosis. Statistically, such a condition usually results in death in the forties.

"12. Considering the severity of the pre-existing condition, while the medical evidence indicates that continuing to work constituted an aggravation of the non-industrial infarction, there is no evidence that it was a *material* aggravation. (For the requirement of a *material* aggravation, also see Aluminum Company, supra; Reveles (sic) supra; and Schneider, supra.)

"13. Decedent did not sustain an accident arising out of and in the course of his employment, within the meaning of the Arizona Workmen's Compensation Act.

## AWARD

"IT IS HEREBY ORDERED that the widow-applicant and dependent children take nothing from the above named employer and/or insurance carrier by reason of the instant claim."

The Industrial Commission, by a vote of 3 to 2, affirmed the decision of the referee.

 Heart attacks may be accidents within the meaning of the Arizona Workmen's Compensation Act. Hartford Accident and Indemnity Co. v. Industrial Commission, 38 Ariz. 307, 299 P. 1026 (1931); Phelps Dodge Corp. v. Cabarga, 79 Ariz. 148, 285 P.2d 605 (1955). Where causation is peculiarly within the knowledge of medical experts as in heart attack cases we must rely upon the opinion of medical experts to determine when an accident has occurred and its cause. Waller v. Industrial Commission, 99 Ariz. 15, 406 P.2d 197 (1965); Continental Casualty Co. v. Industrial Commission, 15 Ariz.App. 565, 489 P.2d 1267 (1971). And an industrially related accident does not have to be *the* cause of the injury or death, but merely *a* cause. If a worker's job precipitated or accelerated a heart attack, there is a causal connection between the employment and the worker's death. Russell v. Industrial Commission, 98 Ariz. 138, 402 P.2d 561 (1965); Tatman v. Provincial Homes, 94 Ariz. 165, 382 P. 2d 573 (1963).

"*Second,* an industrial injury need not be the *sole* cause of death, in order to entitle decedent's dependents to death benefits, as long as it appears that the injury contributed to and accelerated the inevitable." Revles v. Industrial Commission, 88 Ariz. 67, 74, 352 P.2d 759, 763 (1960).

In the instant case, the deceased had worked for over 20 years of his life for respondent in what was admittedly hard and strenuous work activity. The testimony of Dr. Grenfell, a pathologist, on cross-examination was as follows:

"Q You mentioned a finding of a congentially small right coronary artery.

"A Yes.

"Q I take it this is something this man was born with?

"A Yes.

"Q A defect in his coronary system?

"A Yes.

"Q And this hastened—

"A Predisposes to this type of death.

"Q In other words, from the time he was born, he was doomed to an early death?

"A If he had been an accountant or something like that, his right coronary vessel would not have hardened so early.

＊　　＊　　＊　　＊　　＊　　＊

"Q You are of the school of thought that the more increased the man's activity, the faster the disease progresses?

"A Once you go past a certain amount of physical labor, surely. Places where people work hard, like on a farm, it's not uncommon to have arteriosclerosis; or police officers, too."

While other medical experts felt that the conditions of employment did not contribute to the infarction, there was no disagreement that by continuing to work after the attack on 15 January 1969 his death was accelerated.

Dr. Grenfell stated:

"Q ＊ ＊ ＊ Assuming all these facts to be true, Doctor, do you have an opinion as to whether his continued work activities following his being seen on December 31, at which time he was given the nitroglycerin by Dr. Timmons, his continued work activities after that date and more specifically his work activities after sustaining an infarct on the sixteenth or seventeenth, either aggravated his pre-existing condition or contributed to and hastened his death by way of myocardial infarction on January 19?

"A Yes, I do have.

"Q What is that opinion, Doctor?

"A When you say hastened, I think that's a pretty good way of putting it. Had the man not worked so hard, his infarct might have been slower developing and been recognizable.
The second thing is one just doesn't work with a massive infarct like this. It's a wonder he didn't die before."

Dr. Sherman Minkoff, a cardiologist, stated: "I think one could reasonably assume that heavy work following infarction might accelerate his death, yes."

Dr. Thurl Andrews, a specialist in cardiology and internal medicine and defendant's family physician, testified: "I would say that his continuing to work after the onset of the pre-infarction phase, we must presume contributed some to his demise."

■ We have here a man with no previous history of heart disease though the company doctor, a month before the heart attack, suspected something, prescribed medication, and had the deceased return to work. Decedent was not trained in medicine and could only follow these directions and it is apparent from the testimony that by returning to work that his death was accelerated. As our Court of Appeals has stated:

"The petitioner's second contention is based on the dicta recognition in Carson v. Industrial Commission, 7 Ariz. App. 372, 439 P.2d 535 (1968), of the defense of removal from course and

scope of employment of an employee who, having knowledge of his illness, by his own choice continues the activity and aggravates his condition. As in *Carson,* we are of the opinion that such a defense, if it exists, is not applicable under the facts presented. Here, there is no evidence that Mr. Burkhead had any previous history of heart trouble or disease, nor is there any evidence that Mr. Burkhead recognized the symptoms from which he was suffering as the beginning of a myocardial infarction." Fidelity & Cas. Co. of New York v. Industrial Commission, 15 Ariz. App. 285, 287, 488 P.2d 490, 492 (1971).

The opinion of the Court of Appeals, 17 Ariz.App. 185, 496 P.2d 611 (1972), is vacated and the award of the Industrial Commission is set aside.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.