544 P.2d 1133

**AMERICAN SMELTING AND REFINING COMPANY and State Compensation Fund, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Etta J. Phelan, widow of John J. Phelan, Deceased employee, Respondent Applicant.**

No. 1 CA–IC 1291.

Court of Appeals of Arizona,
Division 1,
Department C.

Jan. 27, 1976.

Rehearing Denied March 9, 1976.

Review Denied March 30, 1976.

Evans, Kitchel & Jenckes, P. C., by James G. Speer, Phoenix, for petitioners.

Greg L. Folger, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Ash & Reeb, by R. Ray Addington, Mesa, for respondent applicant.

## OPINION

SCHROEDER, Judge.

In this petition for certiorari directed to the Industrial Commission, the petitioners, American Smelting and Refining Company and its carrier, State Compensation Fund, ask this Court to set aside an award of the Industrial Commission allowing benefits for a death which occurred approximately 30 years after the original industrial injury. Based upon our review of the arguments presented and the record before the Commission, and particularly in the light of the medical testimony that a residual of the industrial injury was the direct cause of the death, we affirm the award. ·

Respondent applicant Etta J. Phelan is the widow of John J. Phelan. In 1942, Mr. Phelan suffered a serious industrial accident when he burned his foot and leg in molten metal while employed by American Smelting and Refining Company. The injuries required intensive treatment for a

number of years. Mrs. Phelan testified that in 1949 his condition became stationary and an award was entered for a permanent scheduled disability. During the next 20 years, Mr. Phelan apparently did not seek additional medical treatment for his leg or foot, but the testimony before the Industrial Commission was that a leg ulcer from the accident never entirely healed and periodically became a festering infection.

In 1969, Mr. Phelan was diagnosed as having a serious kidney problem, unrelated to the industrial injury. By 1972, that problem had become so serious that his treating physicians determined that unless he had a kidney transplant or was put on a dialysis machine, the condition would be fatal within a short period of time. The doctors recognized that if surgery was undertaken, there was a risk of infection due to the old industrial injury, but determined that since at that time the wound was clean, though unhealed, it was best to go forward with a kidney transplant.

The kidney transplant was performed on October 18, 1972. While the transplant at first appeared to be successful, rejection symptoms developed. The physicians, therefore, administered immuno-suppressive drugs to counteract the rejection. Those drugs lowered the body's resistance to infection, and caused the leg ulcer to become infected. Mr. Phelan's body did reject the transplanted kidney, and it was removed. Before a new kidney could be implanted, Mr. Phelan died.

The original immediate cause of death was thought to have been congestive heart failure related to pulmonary emboli. An autopsy, however, revealed that the actual cause of death was a lung infection, bronchial pneumonia with microabscesses.

The petitioners' main contention here is that the record fails to reflect any chain of circumstances between the industrial injury and Mr. Phelan's death. Petitioners point out that the medical records prior to the autopsy simply list the leg ulcer as a contemporaneous condition of the decedent but do not regard it as a cause of death. Petitioners urge that the sole cause of death should be regarded as kidney failure.

The medical evidence adduced at the hearing, however, refutes this position. The immediate cause of death, according to all physicians who testified, was a lung infection. Again according to the medical experts who testified, and as the hearing officer found, the source of that infection was the leg ulcer from the old industrial injury. As Kenneth E. Johnson, M.D., the principal attending physician, testified, "The ulcer caused the infection that spread through his body and resulted in these abscesses in many areas, including the lungs, which caused his death." The hearing officer's findings with respect to the causal relationship between the leg ulcer, the industrial injury, and Mr. Phelan's death, are fully supported.

The instant case does present an unusual interrelationship of industrial and nonindustrial conditions. It is common for industrial injuries to act upon a pre-existing infirmity and result in a compensable claim. *See, e. g., Gullick v. Industrial Commission of Arizona*, 94 Ariz. 237, 383 P.2d 123 (1963); *Murray v. Industrial Commission of Arizona*, 87 Ariz. 190, 349 P.2d 627 (1960). In this case, we deal with a subsequent nonindustrial disease acting upon a pre-existing industrial injury. Petitioners urge that, under our law, the consequence is not compensable. We cannot agree.[1]

1. Petitioners rely upon *In re Estate of Bedwell v. Industrial Commission of Arizona*, 104 Ariz. 443, 454 P.2d 985 (1969) and followed in *Sloan v. Industrial Commission of Arizona*, 14 Ariz.App. 354, 483 P.2d 586 (1971), which we find inapposite. *Bedwell* affirmed an Industrial Commission award denying benefits where it was claimed that an industrial injury hastened death from cancer. In the factual circumstances of that case, there could have been no causal relation between the industrial injury and the death unless the injury followed the onset of cancer. The only medical evidence on that score was based upon supposition and speculation. In the instant case, the medical evidence showing a causal

 It is well established that where, as here, the chain of causation from the original industrial injury to the condition for which compensation is sought is direct, and not interrupted by any intervening cause attributable to the claimant's own intentional conduct, then the subsequent injury or death should be compensable. *See* 1 *Larson, Law of Workman's Compensation*, § 13.11, and cases cited therein. Where an industrial injury prevents treatment of a subsequent and independent disease, the resultant death is compensable. See, for example, *Lighter v. I. Freeman & Sons, Inc.*, 14 A.D.2d 470, 217 N.Y.S.2d 799 (1961), where the employee, after suffering an industrial injury to his right lung, developed cancer in his left lung totally independent of the industrial injury. Because the industrially-injured lung was not strong enough to work alone, cancer surgery was not possible, and the death was held to be compensable due to aggravation by an industrial injury of the subsequent condition. *See also Murray v. Direen Operating Company*, 15 A.D.2d 851, 224 N.Y.S. 2d 571 (1962), in which the industrial injury prevented kidney surgery.

 When, as here, a subsequent disease aggravates the industrial injury, the resultant death from the industrial injury should similarly be compensable. *See Department of Highways v. McCoy,* 301 Ky. 765, 193 S.W.2d 410 (1946), in which the applicant suffered an industrially-related hernia and thereafter developed tuberculosis totally independent from his job. Treatment of the tuberculosis prevented an operation on the hernia, and the resultant condition was held to be a compensable total permanent disability.

Petitioners recognize in their brief that the length of time which elapsed between the original injury and the death is not controlling so long as a causal link between

the injury and the death is sufficiently shown. In this case we hold that it has been demonstrated, and the award is affirmed.

NELSON, P. J., and HENRY S. STEVENS, J., Retired,[2] concurring.

relationship between the injury and decedent's death from infection was not based on supposition and was fully accepted by the Commission.

2. The Honorable Henry S. Stevens, retired, was called to participate in the disposition of this matter.