602 P.2d 841

Finley ALLEN, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Asarco, Inc., Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 2054.

Court of Appeals of Arizona, Division 1, Department C.

Oct. 2, 1979.

Rehearing Denied Nov. 2, 1979.

Review Denied Nov. 20, 1979.

Davis & Eppstein, P. C. by Robert W. Eppstein, Tucson, for petitioner.

James L. Stevenson, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Twitty, Sievwright & Mills by John F. Mills, Phoenix, for respondent employer.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, for respondent carrier.

## OPINION

FROEB, Judge.

Petitioner sustained a fractured collarbone on February 9, 1977, when a jack slipped from under a truck causing the bumper to knock him to the ground. AS-ARCO accepted the claim and petitioner was given treatment, which included the use of a clavicle splint. Before the case closed, petitioner had a nonindustrial accident on June 8, 1977, in which he suffered a compression fracture of the fifth lumbar vertebra. Contending that the second accident resulted from the first injury, petitioner filed an additional claim in the pending case and a new claim. The claims were consolidated for hearing, and, thereafter, the hearing officer entered an award denying benefits. This petition for special action followed when, on review, the hearing officer's award was affirmed.

The facts of the June 8, 1977, accident are uncontroverted. Petitioner had not been released to work by his doctor and was in the company of his son and son-in-law while they hauled trash in a 1968 Chevrolet three-quarter-ton pickup truck. At the time, petitioner was wearing the clavicle splint which incapacitated his right arm. In an effort to enter the passenger side of the pickup cab, he eased the door open and reached up to take hold of the dashboard with his left hand. He was not sure if he had placed his left foot into the cab when the accident happened. While pulling himself into the cab with his left arm, he experienced an "explosion" in his head, "like a gun went off," and he became unconscious. No one observed the incident, but his son said he heard a "pop! crack!" Petitioner was taken to the hospital and placed under the care of Jacob B. Redekop, M. D., who diagnosed the injury as a compression fracture of the fifth vertebra. Petitioner had not previously experienced back trouble.

At the hearing, Dr. Redekop was asked, "Do you have an opinion as to whether the *method* (emphasis ours) by which [petitioner] got into the truck, played a part in the fracture?" He answered: "Assuming that the history and everything is correct, I would say that it would be a factor in producing his back failure."

Petitioner attributed the back injury to the industrial accident which fractured the collarbone because the fractured collarbone required him to maneuver awkwardly in order to get into the pickup truck.

The hearing officer denied benefits on two grounds. The first ground was the credibility of petitioner. He found that there were inconsistencies in petitioner's version of the accident and that petitioner's entire testimony should be disregarded. He then determined that Dr. Redekop's opinion as to the causal relationship between the second accident and the first injury must be disregarded because it was based on petitioner's version of his movements preceding the fracture of the vertebra. While a hearing officer may reject the testimony of an interested witness, he may not arbitrarily reject uncontradicted evidence when noth-

ing intrinsic in the evidence itself or extrinsic in the circumstances casts suspicion on it. *Stanley v. Moan,* 71 Ariz. 359, 227 P.2d 389 (1951). After a careful review of the evidence presented in this case, we are unable to agree that the relatively minor inconsistencies in the testimony justified the rejection of what is essentially an uncontradicted version of the accident. We, therefore, reject this as a ground for denying benefits in this case.

As his second ground for denying benefits the hearing officer assumes the accuracy of petitioner's testimony and Dr. Redekop's opinion, but attributes the fracture to the vertebra to petitioner's conduct and not to the earlier injury.

 The relationship between an industrial injury and a later nonindustrial accident in workmen's compensation law is particularly difficult. It is well settled that to be compensable in Arizona an accident need not be the sole cause of a medical condition as long as it is a cause. *Harbor Insurance Co. v. Industrial Commission,* 25 Ariz.App. 610, 545 P.2d 458 (1976). Whenever the causal relationship is a medical question and is not readily apparent to a layman, expert medical evidence is required to establish it. *McNeely v. Industrial Commission,* 108 Ariz. 453, 501 P.2d 555 (1972). Where, as here, the subsequent injury is the result of a claimant's intentional conduct rather than a medical condition over which he has no control, the issue of causation becomes, to that extent, a legal, rather than a medical, question. *See generally Tatman v. Provincial Homes,* 94 Ariz. 165, 382 P.2d 573 (1963).

A statement of the test used in determining causation is set forth in *American Smelting & Refining Co. v. Industrial Commission,* 25 Ariz.App. 532, 544 P.2d 1133 (1976):

> It is well established that where, as here, the chain of causation from the original industrial injury to the condition for which compensation is sought is direct, and not interrupted by any intervening cause attributable to the claimant's own intentional conduct, then the subse-

quent injury or death should be compensable. See 1 Larson, Law of Workmen's Compensation, § 13.11, and cases cited therein. 25 Ariz.App. at 534, 544 P.2d at 1135.

In *American Smelting,* the causation issue was resolved on medical evidence, the issue there being whether a fatal lung disease was a result of a prior industrial injury to the claimant's leg. Medical evidence also determined the causation issue in *Carabetta v. Industrial Commission,* 12 Ariz.App. 239, 469 P.2d 473 (1970). There, the claimant experienced a fall which was related medically to a previous industrial injury to his leg. We held that:

> Under the circumstances here involved, there being no evidence of any negligent conduct or fault on the employee's part which led to the subsequent injury, it is well established that where a weakened member such as a leg contributes to a later fall or injury, such later fall or injury is a compensable consequence of the prior industrial injury. 12 Ariz.App. at 241, 469 P.2d at 475.

 The causation issue here, however, is primarily a legal question, not a medical one. The injured collarbone was related to the fractured vertebra only because of petitioner's decision to enter the truck and the awkward physical movements chosen to do it. There are times when an injured person, experiencing restrictions on normal activity, must be held to have assumed responsibility for his physical actions. No hard or fast line can be drawn delineating at what point the employer's responsibility for the original injury ceases and the claimant's responsibility begins. The hearing officer in the present case determined that the fractured vertebra was caused by the intentional conduct of the claimant and not by the earlier industrial injury. We hold that the record supports this determination. While petitioner's injured collarbone may have caused him to maneuver awkwardly, it did not require him to attempt a physical movement which would endanger other parts of his body.

Although there are numerous cases from other jurisdictions dealing with this issue, we cite two as illustrative. In *Oertel v. John D. Streett & Company*, 285 S.W.2d 87 (Mo.App.1955), the employee suffered an industrial bank injury. Subsequently, he suffered painful reinjuries while engaged in nonindustrial activities. He testified that he was able to control or prevent reinjury of his back of being very careful in his physical movements. Approximately one and a half years after his injury, the employee played in a softball game as shortstop and fielded a ground ball. In the process of stepping up to meet the ball, stooping down to scoop it up, and throwing it underhanded to first base, he suffered a disabling reinjury of his back. The *Oertel* court stated:

> Since the pain followed immediately after this unusual activity, the Commission could have reasonably found that the pain resulted from injury to claimant's back caused by the force exerted in fielding the ball. The force was not put in motion by the previous accident. Claimant was not caused to slip, fall or twist his body by reason of any weakness in his back due to the prior accident. The force exerted was the result of his own voluntary act, and not a part of a continuous chain of causation flowing from the original force. 285 S.W.2d at 97.

In *Yarbrough v. Polar Ice & Fuel Co.*, 118 Ind.App. 321, 79 N.E.2d 422 (1948), the claimant suffered an industrial injury which resulted in his having a knee which would give out under him unexpectedly. The claimant suffered a fractured jaw when he fell down the basement stairs. The *Yarbrough* court made the following analysis:

> . . . Whether the second accident, in the case before us, was the proximate and natural result of the original injury or whether it was the proximate result of the appellant's negligence and therefore should be regarded as an independent intervening cause, was a question of fact for the Industrial Board, to be decided in view of all the circumstances, and its findings in that regard must be sustained, even though the evidence is undisputed, if there is any legitimate theory applicable to the facts on which the award can be upheld. The appellant, knowing full well that his right knee was weak and unexpectedly gave way on occasions, causing him to fall, elected to carry a bundle of trash, which occupied both his hands, down a basement stairway. Whether this was the act of an ordinarily prudent and careful man under all the circumstances rested exclusively with the Industrial Board to determine. The board concluded that it was not and we cannot say, as a matter of law, that such conclusion is wrong. 118 Ind.App. at 325–326, 79 N.E.2d at 424.

The award of the Industrial Commission is affirmed.

EUBANK, J., concur.

HAIRE, Presiding Judge, dissenting:

The issue in this case involves the question of whether the respondent carrier should be required to furnish medical and compensation benefits for a subsequent injury which the claimant contends was a natural consequence of his prior industrial injury. Claimant alleged that the subsequent injury occurred when he attempted to get into a pickup cab, and, because of an awkward maneuver necessitated by the clavicle brace he was wearing as a result of his industrial injury, twisted his back and fell, causing a severe back injury.

The majority would affirm the hearing officer's denial of compensation upon the basis that the subsequent injury was the result of claimant's intentional conduct rather than a medical condition over which he had no control. I cannot concur in this analysis of the claimant's conduct by the majority. Such an analysis is contrary to this court's opinion in *Carabetta v. Industrial Commission*, 12 Ariz.App. 239, 469 P.2d 473 (1970). In that case, just as much as in this case, the claimant's decision to walk up or down the stairs to his mother's tomb was an "intentional" act. Nevertheless, we held that the ensuing injuries were compensable.

Assuming that other prerequisites to compensability are shown, I do not believe that the mere fact that the act was "intentional" negates compensability. From my reading of the cases involving the question of liability for consequential injuries in workmen's compensation proceedings, the "intentional" act which negates compensability is usually an act which was, in itself, highly inappropriate in the light of the claimant's knowledge of his condition. *See* 1 Larson's Workmen's Compensation Law, § 13.12, p. 3–377. In other words, in order to preclude compensability the intentional act must be considered unreasonable under the circumstances. This rationale involves the idea of intentionally reckless conduct. *Oertel v. John D. Streett & Company,* 285 S.W.2d 87 (Mo.App.1955), relied upon by the majority for its denial of compensation, involved just such rash conduct. I cannot conceive that the claimant's conduct here even approached that standard. In my opinion there should be compensability as long as the subsequent conduct was not unreasonable in light of the claimant's knowledge of his condition.